

U.S. Department of Justice

United States Attorney

*District of Columbia*

---

*Judiciary Center*
*555 Fourth St. N.W.*
*Washington, D.C. 20001*

November 18, 2005

**VIA FACSIMILE**

FILED

JAN 1 2 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

05cr 420

Howard Katzoff, Esq.
717 D Street NW
Suite 310
Washington, D.C. 20004

        Re:    <u>Sharon Rudd</u>

Dear Mr. Katzoff:

      This letter sets forth the full and complete plea offer to your client, Ms. Sharon Rudd. This offer is binding only upon the Criminal Division of the United States Attorney's Office for the District of Columbia (hereinafter "the government" or "this Office" or "USAO-DC"). This plea offer will expire on November 29, 2005. Upon receipt, the executed letter will itself become the plea agreement. The terms of the offer are as follows:

      1.    **Charges:**  Ms. Rudd agrees to plead guilty to a one count Information charging violations of 18 U.S.C. §371; 287; and 2 (Conspiracy to Commit False, Fictitious or Fraudulent Claims). It is understood that the guilty plea will be based on a factual admission of guilt to the offense charged to be made before the Court by Ms. Rudd and will be entered in accordance with Federal Rule of Criminal Procedure 11. Ms. Rudd will agree to a "Statement of the Offense" which fairly and accurately describes Ms. Rudd's actions and involvement in the fraudulent scheme. It is anticipated that during the Rule 11 plea hearing, Ms. Rudd will adopt and sign the Statement of the Offense as a written proffer of evidence.

      2.    **Potential penalties, assessments, and restitution:**  Ms. Rudd understands that the maximum sentence that can be imposed is five years imprisonment, a fine of $250,000, or a fine of twice the pecuniary gain or loss pursuant to 18 U.S.C. § 3571(d), a $100 special assessment, a three-year term of supervised release, an order of restitution and an obligation to pay any applicable interest or penalties on fines or restitution not timely made. Notwithstanding the maximum sentence, Ms. Rudd understands that the sentence to be imposed in this case will be determined by the court, guided by the factors enumerated in 18 U.S.C. 3553(a), including a

consideration of the guidelines and policies promulgated by the United States Sentencing Commission, Guidelines Manual (2004) (hereinafter "Sentencing Guidelines" or "U.S.S.G."). Ms. Rudd understands that this sentence, including the applicable sentencing guidelines range, will be determined solely by the Court, and the government cannot and does not make any promises, representations, or predictions regarding what sentence the Court will impose. Ms. Rudd further understands that if the Court imposes a sentence that is in any way unsatisfactory to her, she cannot move to withdraw her guilty plea.

3.    **Federal Sentencing Guidelines:**  The parties agree and stipulate that the loss amount is between $10,000 and $30,000, and further, based on the facts currently known to the government, the following is a correct calculation of all other relevant Sentencing Guideline factors:

| | | |
|---|---|---|
| § 2 | 2X1.1, 2B1.1 | |
| | (a) Base Offense Level | |
| | (Conspiracy to Commit False, Fictitious, | |
| | or Fraudulent Claims) | 6 |
| | (b)(1) Loss between $10,000 and $30,000 | 4 |
| § 3 | 3E1.1 Acceptance of Responsibility | - 2 |
| TOTAL | | 8 |

Your client and this Office agree that a sentence within the sentencing range determined pursuant to the United States Sentencing Guidelines as set forth in this paragraph would be a reasonable sentence for your client in this case. In the event that this plea offer is either not accepted by Ms. Rudd or is accepted by Ms. Rudd but the guilty plea is subsequently rejected by the Court or withdrawn for any reason, the parties will not be bound by the proposed interpretations of applicable Sentencing Guidelines provisions contained herein.

4.    **Financial Arrangements:**  Ms. Rudd agrees that prior to or at the time of the sentencing, she will deliver to the Clerk's Office, United States District Court for the District of Columbia, a certified check in the amount of $100.00, to cover the special assessment, as required in 18 U.S.C. § 3013; she also agrees to pay restitution in the amount of $29,500 and to be jointly and severally liable with Cocanspirator A for payment of this restitution. Ms. Rudd also agrees to provide a full and complete accounting of all assets, real or tangible, held by

2

her or in any other name for her benefit, and, to that end, to submit a standard form 500 (Financial Statement of Debtor).

5. **Resignation of the Defendant:** Ms. Rudd agrees to voluntarily resign from her position as a procurement technician from the Farm Service Agency of the United States Department of Agriculture and that she will do so prior to the date of her sentencing in this case.

6. **Government Concessions:** In exchange for her guilty plea, the government agrees not to oppose a two-level adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, provided that Ms. Rudd continues to show her acceptance of responsibility, as set forth in U.S.S.G. § 3E1.1, by: (a) cooperating with the presentence report writer (including answering all material questions truthfully and providing all financial information requested); (b) cooperating fully and truthfully with the Court in any proceeding arising from this matter; (c) complying with the other provisions of this agreement; and (d) abiding by the conditions set for her release by the Court. Also, subject to other paragraphs in this agreement, the government will not bring any additional criminal charges against Ms. Rudd in the United States District Court for the District of Columbia or the Superior Court of the District of Columbia for the offenses outlined in the attached Statement of Offense. This agreement not to prosecute Ms. Rudd does not extend to federal or local crimes of violence as those terms are defined in 18 U.S.C. § 16 and D.C. Code § 23-1331(4). It is understood that the United States has no evidence, as of the date of this agreement, of any crimes of violence involving Ms. Rudd.

The government will not oppose Ms. Rudd's release on personal recognizance with appropriate conditions pending her sentencing in this case. In addition, in the event the Court imposes a period of community confinement or imprisonment, the government will not oppose Ms. Rudd's request to continue on personal recognizance pending her obligation to voluntarily self-surrender as directed by the United States Bureau of Prisons.

7. **Reservation of Allocution:** The government reserves its full right of allocution, including, among other things, the right: (a) to inform the presentence report writer of any relevant facts; (b) to dispute factual inaccuracies in the presentence report and to contest any matters not provided for in this plea agreement; and (c) to set forth at sentencing and at any proceedings before the Bureau of Prisons all of its evidence with respect to all of Ms. Rudd's criminal activities, subject to the provisions of the following paragraph.

If in this plea agreement the government has agreed to recommend or refrain from recommending to the sentencing judge a particular resolution of any sentencing issue, the government reserves the right to full allocution in any post-sentence litigation in order to defend the sentencing judge's ultimate decision on such issues.

8.    **Breach of Agreement:** Ms. Rudd agrees that if she fails to comply with any of the provisions of this plea agreement, makes false or misleading statements before the Court, commits any further crimes, and/or attempts to withdraw the plea, the government will have the right to characterize such conduct as a breach of this plea agreement. Moreover, if during an investigation or prosecution Ms. Rudd should commit perjury, knowingly give any false statement, commit any act of contempt, or obstruct justice, the government may prosecute her for these offenses to the fullest extent provided by law. In the event of a breach of this agreement, (a) the government will be free from its obligations under the agreement and may take whatever position it believes appropriate as to the sentence and the conditions of Ms. Rudd's release (for example, should Ms. Rudd commit any conduct after the date of this agreement that would form the basis for an increase in Ms. Rudd's offense level or justify an upward departure -- examples of which include but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, a probation officer, or Court -- the government is free under this agreement to seek an increase in the offense level based on that post-agreement conduct); (b) Ms. Rudd will not have the right to move to withdraw the guilty plea; (c) Ms. Rudd shall be fully subject to criminal prosecution for any other crimes which she has committed or might commit, if any, including but not limited to perjury and obstruction of justice; and (d) the government will be free to use against Ms. Rudd, directly and indirectly, in any criminal or civil proceeding any of the information or materials provided by her pursuant to this agreement.

In the event of a dispute as to whether Ms. Rudd has breached this agreement, and if Ms. Rudd so requests, the matter shall be submitted to the Court and shall be resolved by the Court in an appropriate proceeding at which any information provided to the government prior to, during, or after the execution of the plea agreement shall be admissible and at which the government shall have the burden to establish a breach by a preponderance of the evidence.

9.    **USAO-DC's Criminal Division Bound:** Ms. Rudd understands that this agreement is binding only upon the Criminal Division of the United States Attorney's Office for the District of Columbia. This agreement does not bind the Civil Division of this Office or any other United States Attorney's Office, nor does it bind any other state, local, or federal prosecutor. It also does not bar or compromise any civil, tax, or administrative claim pending or that may be made against Ms. Rudd.

10.    **Complete Agreement:** No other agreements, promises, understandings, or representations have been made by the parties or their counsel than those contained in writing herein, nor will any such agreements, promises, understandings, or representations be made unless committed to writing and signed by Ms. Rudd, Ms. Rudd's counsel, and an Assistant United States Attorney for the District of Columbia.

If the foregoing terms and conditions are satisfactory, Ms. Rudd may indicate her assent by signing the agreement in the space indicated below and returning the original to the

4

undersigned Assistant United States Attorney once it has been signed by Ms. Rudd and her counsel.

Sincerely yours,

KENNETH L. WAINSTEIN
United States Attorney

By:

KIM A. HERD
Assistant United States Attorney
Fraud and Public Corruption Section
555 Fourth Street, N.W.
Room 5862
Washington, D.C. 20530
(202) 616-3702

I have read this plea agreement, consisting of the five previous pages, and have discussed it with my attorney. I fully understand this agreement and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this agreement fully. I am pleading guilty because I am in fact guilty of the offense(s) identified in paragraph one.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this plea agreement. I am satisfied with the legal services provided by my attorney in connection with this plea agreement and matters related to it.

Date: 12/21/05

Sharon Rudd
Defendant

I have read each of the five previous pages constituting this plea agreement, reviewed them with my client, and discussed the provisions of the agreement with my client, fully. These pages accurately and completely set forth the entire plea agreement. I concur in my client's desire to plead guilty as set forth in this agreement.

Date: 12/16/05

Howard Katzoff
Attorney for Sharon Rudd, Defendant

6

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CR 05-429 (EGS)** |
| | : | |
| **v.** | : | |
| | : | |
| **SHARON RUDD,** | : | |
| | : | |
| **Defendant.** | : | |

### STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, defendant, SHARON RUDD, and the United States agree and stipulate as follows:

Between in or about January 1, 2002 until in or about August 1, 2004, Sharon Rudd was employed by the Farm Service Agency ("FSA") of the United States Department of Agriculture ("USDA"), an agency of the United States Government. Sharon Rudd was assigned to the FSA's Management Services Division ("MSD"), where she worked as a procurement technician in the Recurring Requirements Section. Sharon Rudd's office was located at 1400 Independence Avenue, SW in the District of Columbia.

Between in or about January 1, 2002 until in or about August 1, 2004, Coconspirator A (an unindicted coconspirator of Sharon Rudd) worked as a secretary and authorized time clerk for the MSD at the same location as Ms. Rudd. As the time clerk, Coconspirator A was responsible for collecting time and attendance forms from employees, submitting them to supervisors for review, and electronically transmitting the completed forms to the USDA's National Finance Center ("NFC") – the entity responsible for issuing paychecks to U.S. government employees. Coconspirator A was directly responsible for submitting Sharon Rudd's time and attendance forms to the NFC.

While employed at the FSA, Sharon Rudd conspired with Coconspirator A, to knowingly make and present false time and attendance forms, constituting claims against the United States, for payment of overtime hours that Sharon Rudd never worked. Between in or about May 1, 2002 and August 1, 2004, Sharon Rudd and Coconspirator A conspired to enter fraudulent time and attendance forms for numerous pay periods. As a result, Sharon Rudd received paychecks in the amount of $29,500 for overtime hours she never worked.

In furtherance of the conspiracy, in early 2002, Sharon Rudd and Coconspirator A discussed a way for them to earn extra money by altering Ms. Rudd's time and attendance forms to reflect additional overtime hours that Ms. Rudd had not worked. They agreed that Ms. Rudd would pay Coconspirator A $200 each time Coconspirator A altered and submitted Sharon Rudd's time and attendance forms. Also in furtherance of the conspiracy, Sharon Rudd and Coconspirator A agreed that Coconspirator A first would submit Sharon Rudd's accurate time and attendance forms to Sharon Rudd's supervisor, and that once the supervisor approved the accurate time and attendance forms, Coconspirator A would alter them by augmenting the number of overtime hours Sharon Rudd claimed to have worked. Coconspirator A would then submit electronically to the NFC, the altered versions of Sharon Rudd's time and attendance forms, resulting in Ms. Rudd being paid for overtime hours she never worked.

In furtherance of the above described conspiracy and in order to carry out the objects thereof, Sharon Rudd and Coconspirator A, committed the following overt acts, among others:

(1) On or about July 15, 2002, Sharon Rudd and Coconspirator A knowingly created and submitted to the NFC, a false claim, that is a time and attendance form on behalf of Sharon Rudd reflecting that Sharon Rudd had worked 45 hours of overtime that she had in fact never worked.

Sharon Rudd received $1,188.00 in compensation that she was not entitled to as a result of this false claim.

(2) On or about September 22, 2003, Sharon Rudd and Coconspirator A knowingly created and submitted to the NFC, a false claim, that is a time and attendance form on behalf of Sharon Rudd reflecting that Sharon Rudd had worked 40 hours of overtime that she had in fact never worked.  Sharon Rudd received $1,101.20 in compensation that she was not entitled to as a result of this false claim.

(3) On or about May 12, 2004, Sharon Rudd and Coconspirator A knowingly created and submitted to the NFC, a false claim, that is a time and attendance form on behalf of Sharon Rudd reflecting that Sharon Rudd had worked 40 hours of overtime that she had in fact never worked. Sharon Rudd received $1,149.20 in compensation that she was not entitled to as a result of this false claim.

As a result of the conspiracy, Sharon Rudd was paid $29,500 for in excess of 1000 overtime hours that she never worked.  Sharon Rudd knew the claims she submitted were false in that she never worked the overtime hours for which she claimed and received compensation. Sharon Rudd also knew that she had no right to the compensation for the overtime hours she falsely claimed she had worked.

On March 1, 2005, Sharon Rudd voluntarily provided a sworn, signed statement to agents from the USDA's Office of Inspector General.  In this statement, Sharon Rudd admitted that she had conspired with Coconspirator A and "agreed to allow the overtime payments" for overtime hours she did not work.  Sharon Rudd further admitted to giving Coconspirator A a "couple hundred dollars" for each pay period that Coconspirator A entered false claims for overtime hours on behalf of Sharon Rudd.  Sharon Rudd admitted to investigators that she knew what she

3

did was wrong, but that she had felt that both she and Coconspirator A were not receiving credit

for the work they were doing.   Sharon Rudd further stated that she had used the extra

compensation from the false overtime claims to pay bills.


### DEFENDANT'S ACCEPTANCE

I have read every word of the four-page statement of offense.  Pursuant to Fed. R. Cr. P. 11, after consulting with my attorney, I agree and stipulate to this statement of offense, and declare under penalty of perjury that it is true and correct.

Date: 12/21/05

_____
SHARON RUDD
Defendant


I have read each of the four pages constituting this statement of offense and have reviewed and discussed them with my client.  I concur with her decision to stipulate to this statement of offense.

Date: 12/16/05

_____
HOWARD KATZOFF
Attorney for Sharon Rudd, Defendant

4